IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| STEVEN KETH MOWRIS and | )  Case No. 07-61100 |
| MARILYN SUE MOWRIS, | ) |
| | ) |
| Debtors. | ) |

ORDER CONDITIONALLY GRANTING UNITED STATES
TRUSTEE'S MOTION TO DISMISS

The United States Trustee (UST) moved to dismiss the Debtors' Chapter 7 bankruptcy case under 11 U.S.C. § 707(b)(1). At issue here is whether, for purposes of determining whether a presumption of abuse exists under § 707(b)'s means test calculation, the Debtors are permitted to claim a deduction under § 707(b)(2)(A)(ii) or (iii) for payments on their 403(b) retirement plan loans and, if not, whether repayment of such loans constitutes a "special circumstance" under § 707(b)(2)(B) sufficient to rebut the presumption of abuse under § 707(b)(2)(A). The parties agree that, in the event that I find in favor of the UST on both of these issues, the Motion to Dismiss can be granted without an evidentiary hearing. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). Because I find that the Debtors are not permitted to claim a deduction under § 707(b)(2)(A)(ii) or (iii) for payments on their 403(b) retirement plan loans, the UST has established that a presumption of abuse has arisen under § 707(b)(2). I further find that the repayment of such loans, in and of themselves, does not constitute a special circumstance under § 707(b)(2)(B) sufficient to rebut that presumption. Accordingly, the Debtors' case will be dismissed pursuant to §

707(b)(1) unless they convert to Chapter 13 within 20 days.

The Debtors, who are above-median, filed a Chapter 7 bankruptcy petition on July 31, 2007. Section 707(b)(1) provides, in relevant part, that the court may dismiss a case filed by an individual with primarily consumer debts, if the court finds that the granting of relief would be an abuse of the provisions of Chapter 7. Section 707(b), known as the "means test," further provides for a presumption of such abuse in certain circumstances:

> (2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of –
>
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
>
> (II) $10,950.[1]

Under this provision, a debtor is required to deduct certain expenses (enumerated in clauses (ii), (iii), and (iv)) from the debtor's current monthly income and, if this calculation results in an amount sufficient to pay the specified amounts to unsecured creditors, the Chapter 7 filing is presumptively abusive.

This calculation is performed on Official Form 22A. If the calculation results in a presumption of abuse, the debtor may rebut that presumption by demonstrating "special circumstances" justifying additional expenses (above what is permitted in clauses (ii), (iii),

---

[1] 11 U.S.C. § 707(b)(2)(A)(i).

2

and (iv)) or an adjustment to income, for which there is no reasonable alternative.[2] To do so, the debtor must submit, under oath, documentation that establishes why the additional expenses or adjustment to income are necessary and reasonable.[3]

On their Form 22A, the Debtors claim on Line 42, as part of their "[f]uture payments on secured debts," payments totaling $387.87 toward three loans against their 403(b) retirement plans. Payments for secured debts are allowed to be deducted under § 707(b)(2)(A)(iii), which allows debtors to exclude from income "the debtor's average monthly payment on account of secured debts." The Debtors assert that their 403(b) loans are secured loans and can, therefore, be deducted from their income pursuant to § 707(b)(2)(A)(iii). The Debtors rely on the bankruptcy court's decision *In re Thompson*,[4] which held, on facts similar to those here, that payments on loans secured by a 401(k) account are payments on account of secured debts for purposes of § 707(b)(2)(A)(iii) and can be deducted from current monthly income under the means test. However, the bankruptcy court's decision in *Thompson* appears to be the only court so holding, and it was reversed by the District Court for the Northern District of Ohio, which held that retirement account loans are not "debts" under § 101(12) in the first place, because no debtor-creditor relationship exists between the debtor and the retirement plan administrator.[5]

---

[2] 11 U.S.C. § 707(b)(2)(B)(i).

[3] 11 U.S.C. § 707(b)(2)(B)(ii) and (iii).

[4] 350 B.R. 770 (Bankr. N.D. Ohio 2006).

[5] *Eisen v. Thompson*, 370 B.R. 762, 768 (N.D. Ohio 2007).

The Bankruptcy Code defines "debt" as a "liability on a claim," and defines "claim" as a "right to payment."[6] Thus, the terms "debt" and "claim" are considered to be "coextensive" under the Code.[7] A loan from a retirement plan would constitute a "debt" only if the retirement plan administrator has a "claim" for repayment.[8] "The vast majority of courts that have addressed the issue [both pre- and post-BAPCPA] have held that a debtor's obligation to repay a loan from a qualified retirement plan is not a 'debt' under the Code."[9] When a person defaults on a loan taken from a qualified retirement plan, the plan administrator usually offsets the unpaid balance of the loan from the person's account. Consequently, the plan administrator does not have a "right to payment" from the account holder if he defaults on the loan.[10] In effect, the Debtors have borrowed their own money, such that, in the event that they fail to repay the loans, then they have simply taken an

---

[6] 11 U.S.C. §§ 101(12) and 101(5).

[7] *McVay v. Otero*, 371 B.R. 190, 195 (W.D. Tex. 2007) (citations omitted); *In re Mordis,* ___ B.R. ___, 2007 WL 2962903 at *3 (Bankr. E.D. Mo. Oct. 9, 2007) (slip copy).

[8] *Id.*

[9] *In re Mordis*, 2007 WL 2962903 at *3 (citing *Mullen v. United States (In re Mullen)*, 696 F.2d 470, 472 (6th Cir. 1983); *In re Villarie*, 648 F.2d 801, 811 (2d Cir. 1981); *In re Thompson*, 370 B.R. at 769-70; *In re Otero*, 371 B.R. 190, 196-97 (Bankr. W.D. Tex. 2007); *In re Jones*, 335 B.R. 203, 210 (Bankr. N.D. Fla. 2005); *In re Esquival*, 239 B.R. 146, 151 (Bankr. E.D. Mich. 1999); *In re Scott*, 142 B.R. 126, 131-32 (Bankr. E.D. Va. 1992)). *See also McVay v. Otero*, 371 B.R. 190 (W.D. Tex. 2007) ("There is a clear consensus that an individual's pre-petition borrowing from his retirement account does not give rise to a secured or unsecured 'claim,' or a 'debt' under the Bankruptcy Code.") (citation omitted).

[10] *Id.*

advance on their retirement benefits.[11] Since such a loan is not a "debt" under the Code in the first place, payments on them cannot be "payments on account of secured debts," for the means test calculation under § 707(b)(2)(A)(iii).[12]

Further, nothing in the BAPCPA amendments to the Code changed that conclusion.[13] The Supreme Court has noted that Congress does not amend the Code on a clean slate; rather, courts should presume that Congress is aware of and understands past judicial interpretation and practice when it amends the Code.[14] The overwhelming majority of pre-BAPCPA opinions held that a debtor's obligation to make payments on a loan taken from a qualified retirement account was not a claim or debt under the Code, and the court must assume that Congress was aware of this judicial interpretation when it enacted BAPCPA.[15] In fact, Congress expressly preserved this interpretation when it added § 362(a)(19), which provides that the automatic stay does not apply to any automatic withdrawal from a debtor's wages to repay a loan from a retirement account, but expressly states that "nothing in this paragraph may be construed to provide that any loan made under . . . a contract or account under section

---

[11] *McVay v. Otero*, 371 B.R. at 198.

[12] *Id.* at 210 ("Given the Court's determination that the [Debtors'] [retirement] loans were not 'debts' under the Code, the loans necessarily could not be 'secured debts,' and the repayment of such debts could not be 'payments on account of secured debts' for the purposes of § 707(b)(2)(A)(iii).").

[13] *McVay v. Otero*, 371 B.R. at 201; *In re Mordis,* 2007 WL 2962903 at *4.

[14] *In re Mordis*, 2007 WL 2962903 at *4 (citing *Dewsnup v. Timm*, 502 U.S. 773, 779 (1992)).

[15] *Id.*

5

403(b) of the Internal Revenue Code of 1986 constitutes a claim or debt under this title."[16]

Because a loan against a qualified retirement account is not a debt under the Code, it cannot be a secured debt under § 707(b)(2)(A)(iii).[17] Accordingly, the Debtors can not claim on Form 22A deductions from current monthly income for their payments on their 403(b) loans.

Alternatively, the Debtors assert that they may claim the retirement loan repayments as an Other Necessary Expense under § 707(b)(2)(A)(ii), which provides that "[t]he debtor's monthly expenses shall be the debtor's monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides."[18] The Debtors candidly concede that 403(b) loan repayments are not specifically included in the examples of Other Necessary Expenses published by the IRS, but point out that the IRS's list of such expenses is expressly nonexclusive, and does provide a catch-all category for such Other Necessary Expenses. According to the Internal Revenue Manual, other expenses may be considered, if they "provide for the health and welfare of the taxpayer and/or his or her family or they must be for the production of income," which is

---

[16] 11 U.S.C. § 362(a)(19). *Accord In re Mordis* 2007 WL 2962903 at *4.

[17] *Thompson*, 370 B.R. at 770-71; *Otero*, 371 B.R. at 199, 210; *Mordis,* 2007 WL 2962903 at *4.

[18] 11 U.S.C. § 707(b)(2)(A)(ii).

6

determined based on the facts and circumstances of each case.[19]

The Debtors suggest that repayment of loans from retirement accounts provides for the taxpayer's health and welfare, or are for the production of income. They assert that they are analogous to other specific examples on the list, including involuntary deductions from a debtor's paycheck, and expenses for life insurance, taxes, and student loans. However, this argument has been rejected correctly by other courts,[20] and the Debtors have offered no evidence as to how the repayment of their retirement loans provide for their health and welfare.

Because the retirement loans cannot be deducted as an expense on the Form 22A, the Debtors have an additional $387.87 in current monthly income under the means test. Based on the UST's calculations as evidenced by Exhibit A to its Motion to Dismiss, this means that the Debtors have $16,979.60 in disposable income over sixty months. Since this is greater than $10,950, the presumption of abuse arises under § 707(b)(2)(A)(i).

---

[19] Internal Revenue Manual § 5.15.1.10, *available at* http://www.irs.gov/irm/part5/ch15s01.html.

[20] *In re Mordis*, 2007 WL 2962903 at *2 (holding that payments on retirement loans are not a type of expense specified in § 707(b)(2)(A)(ii) because that section explicitly recites that only the expenses listed by the IRS as "Other Necessary Expenses" are the type of expenses that a debtor can exclude from her income in the means test analysis, and the Internal Revenue Manual recites that a person may deduct an "involuntary deduction" from her wages only if the deduction is a condition of the person's employment); *In re Lenton*, 358 B.R. 651, 658 (Bankr. E.D. Pa. 2006) (denying the deduction, and holding that the fact that a debtor took a loan under terms that mandate repayment by payroll deduction does not change the nature of the funds when the debtor repays them); *In re Barraba*, 346 B.R. 724, 730 (Bankr. N.D. Tex. 2006) (holding that 401(k) loan repayments are not Other Necessary Expenses under § 707(b)(2)(A)(ii)(I) where the loan repayment was not a condition of the debtor's employment and the only consequence of default was a tax consequence for the debtor).

In order to rebut the presumption, the Debtors must demonstrate, and document, "special circumstances" under § 707(b)(2)(B). That section provides, in relevant part, that "the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."[21]

The Debtors again rely on the bankruptcy court's decision in *Thompson* which held that, because the debtor took out a retirement loan nineteen months prior to filing bankruptcy, and there was no way for the debtor to terminate the automatic repayment obligation unless he either quit his job or repaid the loan in full, special circumstances existed to rebut the presumption.[22] However, the District Court reversed on that issue as well, holding that an obligation to repay a loan is not, in and of itself, a special circumstance, although the circumstances that led to taking that loan may be.[23] As the UST points out, § 707(b)(2)(B) refers to serious medical conditions and a call to active military duty as examples of special circumstances. Although this is not an exhaustive list of what may constitute special circumstances, the list sets out are examples of the types of situations which qualify.[24]

---

[21] 11 U.S.C. § 707(b)(2)(B)(i).

[22] 350 B.R. at 777-78.

[23] *Eisen v. Thompson*, 370 B.R. at 773.

[24] *See In re Naut*, ___ B.R. ___, 2008 WL 191297 at *10 (Bankr. E.D. Pa. 2008) (holding that special circumstances necessary to rebut the presumption of abuse do not permit every conceivable unfortunate or unfair circumstance, but include only those circumstances that

"Retirement plan loans are neither extraordinary nor rare; many individuals take loans for many different reasons, and they are all required to repay the loans. Without more, a situation as common as the withdrawal of one's retirement funds cannot be a 'special circumstance' within the accepted definition of this term."[25] In the *Thompson* case, since there was no evidence as to what circumstances led the debtor to borrow the money from the retirement account, the District Court held that the Bankruptcy Court's finding of special circumstances was an abuse of discretion.[26] Here, the Debtors have offered no explanation or evidence indicating that anything other than ordinary circumstances caused them to take the loans from their retirement accounts. Accordingly, there is no evidence that the mere existence of the Debtors' retirement loans rises to the level of special circumstances contemplated by § 707(b)(2)(B).

Finally, as the UST states, in a Chapter 13 case, the Debtors' retirement loan repayments would be deductible from disposable income and therefore would not be required to be included in their plan payments. Therefore, the Debtors might contend that this constitutes a special circumstance to rebut the presumption of abuse in Chapter 7.

However, the exclusion of retirement loan payments from disposable income in

---

cause higher household expenses or adjustments of income for which there is no reasonable alternative, *i.e.,* they are unforeseeable or beyond the control of the debtor) (citation omitted); *In re Hanks*, 362 B.R. 494 (Bankr. D. Utah 2007) (applying the doctrine of *ejusdem generis* to hold that only circumstances that are similar in nature to a serious medical condition or call to active duty are sufficient to rebut the statutory presumption of abuse).

[25] *Id.*

[26] *Id.*

Chapter 13 cases comes from § 1322(f), which provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." Since Congress did not incorporate any provisions from Chapter 13 into the means testing provisions in § 707(b)(2)(A), we must assume that Congress intentionally gave a Chapter 13 debtor the ability to exclude the repayment of a loan from a retirement plan, but disallowed a Chapter 7 debtor the same ability under the means testing provisions of § 707(b)(2)(A)(i).[27]

> Section 1325(b)(1)(B) requires a Chapter 13 debtor to devote all of her disposable income over a three to five year period to paying her creditors. It is certainly possible that the debtor may pay the balance of a loan taken from her retirement account during that period, and the trustee would then have the ability to redirect the newly available funds to the creditors. Thus, the provisions governing Chapter 13 protect a debtor's ability to repay a loan from her retirement account while at the same time requiring the debtor to devote the amount of that payment to her creditors if she pays the loan during the Chapter 13 commitment period. Accordingly, requiring a debtor with a substantial obligation to repay a loan from her 401(k) account to proceed under Chapter 13 as opposed to Chapter 7 is certainly consistent with the stated Congressional policy objectives underlying BAPCPA.[28]

Thus, the UST is correct that the fact that a Chapter 13 debtor can take such payments into account is simply irrelevant in the Chapter 7 context.

In sum, I find that the UST has demonstrated that the Debtors' Chapter 7 case is presumptively abusive of the provisions of Chapter 7 under § 707(b)(2)(A) and that they have failed to rebut the presumption of abuse under § 707(b)(2)(B). Accordingly, the

---

[27] *Accord In re Mordis*, 2007 WL 2962903 at *4.

[28] *Id.* at *5 (citations omitted).

Debtors will have 20 days in which to convert their case to Chapter 13; otherwise, their case will be dismissed.

    IT IS SO ORDERED.

                                                /s/ Arthur B. Federman
                                                   Bankruptcy Judge

Date: March 17, 2008

Copy to: J. Kevin Checkett
         Sherri L. Wattenbarger
         Fred C. Moon